# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **MICHELE GILL CONTE,**<br><br>    **Conte,**<br><br>    v.<br><br>**PROMETHEAN INC., MATTHEW COLE, BRITT PROVOST and ABC DEFENDANTS**[1]<br><br>    **Defendants.** | Civ. No. 21-20490 (KM) (JBC)<br><br>**OPINION** |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Michele Gill Conte, filed this civil action in New Jersey state court against her former employer, Promethean Inc., and two of the company's executives, Matthew Cole and Britt Provost, asserting various common law tort and contract claims pertaining to events surrounding the termination of her employment in August 2019.

Now before the Court is Defendants' motion to dismiss Conte's complaint as to defendants Cole and Provost for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), and to dismiss the complaint in its entirety for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).[2] For the reasons expressed below, Defendants' motion to dismiss is **GRANTED**.

---

[1] "ABC Defendants," a name which appears nowhere except in the caption, seems to a be a "John Doe" placeholder. I disregard it.

[2] Certain citations to record are abbreviated as follows:

   "DE" = Docket entry number in this case

   "Compl." = Conte's Complaint (DE 1 Ex. A)

   "Mot." = Defendants' Memorandum of Law in Support of their Motion to Dismiss Conte's Complaint (DE 4-1)

   "Opp." = Conte's Opposition to Defendants' Motion to Dismiss (DE 11)

I. **BACKGROUND**

**Factual Allegations**

This action pertains to Conte's employment with Promethean Inc. ("Promethean"), an education and information technology company, and events surrounding her termination in August 2019. Conte, who began working for Promethean in May 2012 as an Area Sales Manager, generally alleges that in 2019 she was targeted and harassed by supervisors at the company who fabricated grounds for her termination, and who continued to target and harass her even after she found new employment.

The sequence of events leading up to Conte's termination began in May 2019 when defendant Matthew Cole, Conte's new supervisor, allegedly subjected her to an "uncomfortable" introductory phone call, during which he asked her a number of intrusive personal questions. (Compl. ¶¶ 27-32.) After Conte rebuffed Cole's attempt to socialize on a personal level, he allegedly began "targeting" her by reporting various "unfounded complaints" against her. (Compl. ¶¶ 9-10, 35-37.) On July 18, 2019, Cole informed Conte that he received complaints from two co-workers about her behavior at a Promethean-sponsored event earlier that week. According to Cole, the co-workers stated that Conte made "inappropriate gestures" at the event and acted "out of line." (Compl. ¶¶ 53-54.) Cole instructed Conte not to discuss the complaints with "the individuals involved in the incident until [she] had an opportunity to reflect and the weekend had passed." (Compl. ¶ 57.) Conte alleges that she took the weekend to reflect on the situation and then reached out to her co-workers for more information, as she believed there must have been some sort of misunderstanding. (Compl. ¶¶ 54, 58.) Conte asserts that certain of her colleagues told her that they did not lodge any complaints against her, and clarified that Cole reached out to them—not the other way around—to "solicit their input," seemingly "seeking to paint plaintiff in a [negative] light." (Compl. ¶ 54.) On July 23, 2019, Cole sent Conte a "Warning Letter" concerning the alleged complaints against her in which he expressed his disappointment that

2

Conte ignored his instructions not to contact her colleagues about the situation before allowing the weekend to pass. (Compl. ¶ 53.) Conte contends that the alleged complaints against her were false, and that she did comply with Cole's instructions not to communicate with her colleagues until after the weekend. (Compl. ¶¶ 58, 68.) Conte further contends that Cole's letter to the contrary is proof that Cole was maliciously targeting her and trying to damage her professional reputation. (Compl. ¶ 58, 68.) On August 14, 2019, at her own request, Conte participated in a conference call with Cole and Defendant Britt Provost, Promethean's Head of Human Resources, regarding the allegations against Conte. Conte alleges that on the call, Cole and Provost wrongfully accused Conte of failing to comply with Cole's instructions regarding discussing the complaints against her with other, "making her team feel uncomfortable," and engaging in "retaliatory behavior." (Compl. ¶¶ 80, 83.) Following this discussion, Cole and Provost terminated Conte's employment with Promethean.³ (Compl. ¶ 85.)

Conte alleges that Defendants continued to "personally attack" her even after she began working for another employer, Sussman Sales Company, Inc. ("Sussman"). (Compl. ¶¶ 89-90.) According to Conte, Defendants sent her a letter on October 29, 2019, "harassing her and accusing her of [ ] trying to steal business or customers of Promethean, which was not true." (Compl. ¶ 91.) On February 17, 2020, Defendants sent Conte a cease-and-desist letter, claiming she breached a non-solicitation agreement she had signed with Promethean,

---

³ Conte alleges an additional anecdote as an illustration of her claim that her termination was unfounded and the result of malicious targeting and harassment. According to Conte, in March 2019, she helped arrange for e-mail forwarding for a member of her sales team who was preparing for paternity leave. (Compl. ¶ 22.) She received approval to do so from Promethean's Director of Global Compensation and Benefits. (Compl. ¶ 23.) On July 19, 2019, Conte was informed by Promethean's HelpDesk personnel that the email forwarding had gone into effect. (Compl. ¶ 55.) During the August 14, 2019 conference call, Cole and Provost allegedly accused Conte of inappropriately shutting down her team member's e-mail while he was on leave. (Compl. ¶ 81.) Conte responded that she was following instructions and prior practice for when an employee is on paternity leave. (Compl. ¶ 82.)

and informing her that they notified her new employer of the breach by sending Sussman a copy of the letter as well. (Compl. ¶ 92.) Conte alleges that on March 11, 2020, after receiving a copy of Promethean's cease-and-desist letter, Sussman terminated her employment. (Compl. ¶ 93.)

In connection with her terminations from Promethean and Sussman, Conte is now suing Defendants for 1) breach of the implied covenant of good faith and fair dealing, 2) tortious interference with economic relations, 3) intentional infliction of emotional distress, 4) intentional or negligent misrepresentation, 5) unjust enrichment, 6) "refusal to mitigate damages," 7) negligence, and 8) "tortious conduct of employee." (Compl. ¶¶ 94-135.)

**Procedural History**

On August 12, 2021, Conte filed the complaint in this action in the Superior Court of New Jersey, Law Division, Bergen County. On December 14, 2021, Defendants timely removed the case to this Court, asserting federal subject matter jurisdiction pursuant to 28 U.S.C. § 1332. (*See* DE 1.) On January 4, 2022, Defendants moved to dismiss Conte's complaint as to Cole and Provost for lack of personal jurisdiction, and to dismiss the complaint entirely for failure to state a claim. (DE 4.) On March 8, 2022, Conte filed a brief in opposition to Defendants' motion to dismiss. (DE 11.) On March 21, 2022, Defendants filed a reply brief in support of their motion to dismiss. (DE 12.) The motion to dismiss is thus fully briefed and ripe for decision.

## II.   DISCUSSION

### A. Failure to state a claim

Ordinarily, discussion of the issue of personal jurisdiction over defendants Cole and Provost would precede discussion of the substantive claims. But because this Court may exercise personal jurisdiction over defendant Promethean, I will in any event be considering Conte's arguments that the complaint does not state a claim, pursuant to Fed. R. Civ. P. (12)(b)(6). Those arguments substantially overlap as to Cole and Provost. I will therefore

defer the discussion of personal jurisdiction over Cole and Provost, which is better understood in that context.

### 1. Legal Standard.

Federal Rule of Civil Procedure 8(a) does not require that a pleading contain detailed factual allegations but "more than labels and conclusions." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The allegations must raise a claimant's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570. That standard is met when "factual content [] allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rule 12(b)(6) provides for the dismissal of a complaint if it fails to state a claim. The defendant bears the burden to show that no claim has been stated. *Davis v. Wells Fargo*, 824 F.3d 333, 349 (3d Cir. 2016). I accept facts in the complaint as true and draw reasonable inferences in Plaintiff's favor. *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (en banc).

### 2. Analysis.

#### a. Breach of Implied Covenant of Good Faith and Fair Dealing

Count One of the complaint asserts a claim for breach of the implied covenant of good faith and fair dealing. Under New Jersey law, every contract contains an implied covenant of good faith and fair dealing. *See Sons of Thunder, Inc. v. Borden, Inc.*, 148 N.J. 396, 690 A.2d 575 (1997). That implied covenant dictates that a party, even if it does not breach an express term, is may not act in bad faith to interfere with the other's ability to enjoy the fruits of the contract. *Wilson v. Amerada Hess Corp.*, 168 N.J. 236, 244, 773 A.2d 1121 (2001); *see also Brunswick Hills Racquet Club, Inc. v. Route 18 Shopping Ctr. Assocs.*, 182 N.J. 210, 225, 864 A.2d 387 (2005).

To recover for breach of the implied covenant, a plaintiff must prove that: (1) a contract exists between the parties; (2) the plaintiff performed under the terms of the contract; (3) the defendant acted in bad faith with the purpose of depriving the plaintiff of rights or benefits under the contract; and (4) the

defendant's actions caused the plaintiff to sustain damages. *TBI Unlimited, LLC v. Clear Cut Lawn Decisions, LLC*, 2014 WL 3853900, at *3 (D.N.J. Aug. 5, 2014) (citing *Wade v. Kessler. Inst.*, 343 N.J.Super. 338, 778 A.2d 580, 586 (Ct. App. Div. 2001), *aff'd as modified*, 172 N.J. 327, 798 A.2d 1251 (2002)); *Pactiv Corp. v. Perk–Up, Inc.*, 2009 WL 2568105, at *12–13 (D.N.J. 2009).

Count One does not state a claim. Breach of the implied covenant of good faith and fair dealing is not a free-standing cause of action based on "bad faith" conduct; such a covenant is an implied covenant of a *contract*. "[I]n the absence of a contract, there can be no breach of an implied covenant of good faith and fair dealing." *Noye v. Hoffmann–La Roche Inc.*, 238 N.J.Super. 430, 433, 570 A.2d 12, 14 (App. Div. 1990); *accord Obendorfer v. Gitano Group*, 838 F.Supp. 950, 954 (D.N.J. 1993).

Conte, confusingly, denies that she is asserting a contractual cause of action. She argues that "Count One is "Duty of Good Faith and Fair Dealing" not, as defendants state, 'Implied Contractual Duty of Good Faith and Fair Dealing.' The breach of the implied or express Covenant of Fair Dealing deals with the bad faith and malice conduct of the parties . . . during the employment relationship . . . ." (Opp. at 29)

It may be that a contractual cause of action is buried in the allegations or could be alleged, but as it stands, it is misconceived. I will dismiss Count One without prejudice to the filing of a proposed amended complaint that clearly identifies the contract at issue and the manner in which the Defendants' conduct either breached it or denied Conte something to which she was entitled under that contract.

### b. Tortious Interference with Economic Advantage

Count Two of the complaint asserts a claim for tortious interference with economic relations or economic advantage under New Jersey law. The elements of tortious interference with economic advantage are (1) a "reasonable expectation of economic advantage"; (2) interference done intentionally and

6

with malice; (3) injury, in the sense of the loss of prospective gain; and (4) damages. *MacDougall v. Weichert*, 144 N.J. 380, 677 A.2d 162, 174 (1996).

Conte alleges that Defendants engaged in tortious interference with the prospective gain she reasonably expected from 1) her employment with Promethean, and 2) her subsequent employment with Sussman. Conte's complaint does not state a claim for tortious interference under either theory.

Tortious interference may be viewed as a third-party cause of action; a party cannot "interfere" with its own economic relations. With respect to her termination from Promethean, to the extent Conte brings this claim against Promethean itself, it is unsustainable as a matter of law. A claim for tortious interference may not be brought against an employer with respect to an employment relationship with its own employee. *See Naik v. RGIS Inventory Specialists, Inc.*, 2001 U.S. Dist. LEXIS 25960, at *6 (D.N.J. Feb. 26, 2001). Importantly, the same principle extends to claims brought against supervisors like Cole and Provost acting in their professional capacities. As courts of this Circuit have held, "only when an employee asserts that a supervisor was acting outside the scope of his employment and/or for his own personal gain may the employee go forward with a claim for tortious interference." *Marrin v. Cap. Health Sys., Inc.*, No. CIV.A. 14-2558 FLW, 2015 WL 404783, at *7 (D.N.J. Jan. 29, 2015) (citing *Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F.Supp.2d 455, 478 (D.N.J.2001); *Emerson Radio Corp. v. Orion Sales, Inc.*, 253 F.3d 159, 173 (3d Cir.2001).

For these purposes, Cole and Provost stand in the shoes of Promethean. Conte does assert that Cole and Provost acted outside of their authority as Promethean executives (Opp. at 30-31), in effect rendering them third parties for the purposes of this tort. Her allegations to that effect, however, are conclusory and fail to meet the requisite pleading standard under *Iqbal*. Conte's allegations of negative interactions with Cole—participating in an "uncomfortable" phone call with him (Compl. ¶¶ 28-32), being undeservingly yelled at for failing to hit a sales quota (Compl. ¶¶ 37-38), and receiving

fabricated negative feedback from him with respect to her behavior at a recent work event (Compl. ¶ 53)—do not permit the Court to infer that Cole acted outside his supervisory role at Promethean. As to Provost, the allegations are that she participated in calls and emails regarding the allegedly false complaints lodged against Conte (Compl. ¶¶ 75-84), and that she was involved in Conte's termination (Compl. ¶ 85). These alleged actions are reasonably within Provost's professional duties and do not give rise to any inference that she acted outside her role as Promethean's Head of Human Resources. As against Cole and Provost, Conte has failed to allege a claim for tortious interference with economic advantage in connection with her termination from Promethean or the surrounding events.

Conte's claim for tortious interference with economic advantage as it pertains to her termination from Sussman also fails. Conte alleges that Promethean tortiously interfered with her employment at Sussman when one of its in-house attorneys sent her cease-and-desist letters, with copies to Sussman, her new employer. (Compl. ¶89-93) Promethean's letters, however, are protected by New Jersey's litigation privilege, under which "[a] statement made in the course of a judicial proceeding is absolutely privileged and wholly immune from liability." This privilege applies to "any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Williams v. Kenney*, 379 N.J. Super. 118, 134 (App. Div. 2005) (internal quotation marks and citation omitted). The New Jersey Supreme Court has emphasized that the privilege "is not limited to statements made in a courtroom during a trial," but rather, "extends to all statements or communications in connection with the judicial proceeding," including pre-litigation communications. *Hawkins v. Harris*, 141 N.J. 207, 216 (1995); *see Williams*, 379 N.J. Super. at 134 (stating that the privilege applies to "settlement negotiations and private conferences"); *see also Peterson v. Ballard*, 292 N.J. Super. 575, 579-80 (App. Div.), *certif. denied.*, 147

8

N.J. 260 (1996) (applying the litigation privilege in dismissing claim arising from comments made by an attorney during witness interview in anticipation of litigation). Indeed, courts in this Circuit have regularly found that cease-and-desist letters, like those Promethean sent, that further a party's legitimate business interest by asserting a claimed legal right are protected by New Jersey's litigation privilege. *See, e.g., DeNicholas v. Centene Corp.*, 2017 U.S. Dist. LEXIS 217718, *1-7 (D.N.J. Oct. 20, 2017) (absolute privilege covers cease-and-desist letter which "contemplated action, and . . . asserted Defendants' claimed legal rights"); *Rickenbach v. Wells Fargo Bank, N.A.*, 635 F. Supp. 2d 389, 402-03 (D.N.J. 2009) (holding that pre-litigation demand letter seeking resolution of a dispute before filing suit is protected).

Based only on allegations involving these protected communications, Conte's tortious interference claim with respect to her termination from Sussman must fail.

Count Two will be dismissed without prejudice.

### c. Intentional Infliction of Emotional Distress

Count Three of the complaint asserts a claim for intentional infliction of emotional distress. To state a prima facie case for intentional infliction of emotional distress, a plaintiff must plausibly assert that: 1) the defendant acted either intentionally to do the act and to produce emotional distress or acted "recklessly in deliberate disregard of a high degree of probability that emotional distress will follow"; 2) the defendant's conduct is so "extreme and outrageous ... as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community"; 3) the defendant's intentional or reckless conduct proximately caused the plaintiff's emotional distress; and 4) the plaintiff suffered emotional distress that is "so severe that no reasonable [person] could be expected to endure it." *Juzwiak v. Doe*, 415 N.J. Super. 442, 451 (App. Div. 2010) (citing and quoting *Buckley v. Trenton Saving Fund Socy.*, 111 N.J. 355 (1988)).

Conte's complaint does not state a claim for intentional infliction of emotional distress. As the Third Circuit has observed, "it is extremely rare to find conduct in the employment context that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of intentional infliction of emotional distress." *Cox v. Keystone Carbon Co.*, 861 F.2d 390, 395 (3d Cir.1988), *cert. denied*, 498 U.S. 811 (1990). Moreover, "while loss of employment is unfortunate and unquestionably causes hardship, often severe, it is a common event and cannot provide a basis for recovery for infliction of emotional distress." *Id.* (internal quotation and citation omitted). Here, Conte does not allege any conduct on the part of Cole, Provost, or any other Promethean employee that was sufficiently "extreme and outrageous," "atrocious," or "utterly intolerable in a civilized community." *Juzwiak*, 415 N.J. Super. at 451. True, Conte alleges that she was unfairly singled out when her employment was terminated, but "an ulterior motive for discharging an employee, such as personal dislike, does not by itself provide a sufficient foundation for finding the level of outrageousness required to support this cause of action." *Griffin v. Tops Appliance City, Inc.*, 337 N.J. Super. 15, 24 (App. Div. 2001) (citing *Cox*, 861 F.2d 390). And though Conte does allege that she has suffered emotional distress (Compl. ¶ 108), she does not allege any facts that suggest her emotional distress was "so severe that no reasonable [person] could be expected endure it." *Id.* Without even taking the remaining factors into account, Conte's failure to plead these fundamental elements is fatal to her claim for intentional infliction of emotional distress.

Count Three will be dismissed without prejudice.

### d. Intentional or Negligent Misrepresentation

Count Four of the complaint asserts a claim for intentional or negligent misrepresentation. Because intentional and negligent misrepresentation "sound in fraud," they are subject to a heightened pleading standard under Fed. R. Civ. P. 9(b). *Giercyk v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. 13-6272, 2015 WL 7871165, at *2 (D.N.J. Dec. 4, 2015); *Travelers Indem. Co. v.*

*Cephalon, Inc.*, 620 F. App'x 82, 85, n.3 (3d Cir. 2015) (affirming Rule 9(b) dismissal of claims for intentional misrepresentation, negligent misrepresentation, and unjust enrichment). Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with *particularity* the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b) (emphasis added). As the Third Circuit has explained, "[a] Plaintiff alleging fraud must therefore support its allegations with all of the essential factual background that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016) (citing *In re Rockefeller Ctr. Props., Inc. Securities Litig.*, 311 F.3d 198, 217 (3d Cir. 2002)) (citation and quotation marks omitted). In other words, Conte may satisfy this requirement by pleading "the date, time and place" of the alleged fraud or deception, or by "otherwise inject[ing] precision or some measure of substantiation" into the allegation. *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (citing *Lum v. Bank of Am.*, 361 F.3d 217, 224 (3d Cir. 2004)). Additionally, to survive a motion to dismiss, Plaintiffs must also allege "who made a misrepresentation to whom and the general content of the misrepresentation." *Gray v. Bayer Corp.*, No.Civ.A.08–4716, 2010 WL 1375329, at *3 (D.N.J. Mar. 31, 2010) (citing *Lum*, 361 F.3d at 224).

   To state a claim for intentional misrepresentation, a plaintiff must allege: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." *Donnelly v. Option One Mortg. Corp.*, No. CIV.A. 11-7019 ES, 2014 WL 1266209, at *11 (D.N.J. Mar. 26, 2014). "The elements of negligent misrepresentation are the same as those for fraudulent concealment, except that a plaintiff need not allege knowledge of falsity or intent to induce reliance." *Semeran v. Blackberry Corp.*, 2016 WL 406339, at *5 (D.N.J. Feb. 2, 2016).

Conte's complaint does not state a claim for intentional or negligent misrepresentation. Conte does not plead the falsity of the alleged fabricated complaints with the requisite level of particularity. Nor do her allegations satisfy the other basic elements of a misrepresentation claim. Though Conte implies that Defendants, particularly Cole, lied about complaints being lodged against her (Compl. ¶ 83), Conte does not allege that Defendants intended to defraud *her,* in the sense that they expected Conte to rely on these alleged misrepresentations, or that she did in fact rely on them in any way. Indeed, these misrepresentations are presented as mere pretexts for dismissal, which neither management nor Conte believed.[4]

Count Four will be dismissed. Once again, these appear to be defects that could be remedied by amendment, so the dismissal is without prejudice.

### e. Unjust Enrichment

Count Five of the complaint asserts a claim for unjust enrichment. As with misrepresentation claims, claims for unjust enrichment "sound in fraud" and are subject to a heightened pleading standard under Fed. Rule Civ. P. 9(b). *See supra* Section II.B.2.d.; *Travelers Indem. Co.*, 620 Fed.Appx. at 82, 85, n.3. Unjust enrichment is a "quasi-contract doctrine" that applies when a party "received a benefit and [ ] retention of that benefit without payment would be unjust." *Thieme v. Aucoin-Thieme*, 227 N.J. 269, 151 A.3d 545, 557 (2016) (citations omitted). To state a claim for unjust enrichment under New Jersey law, a plaintiff must allege that "(1) at Plaintiffs' expense (2) defendant received benefit (3) under circumstances that would make it unjust for defendant to retain benefit without paying for it." *Arlandson v. Hartz Mt. Corp.*, 792 F. Supp. 2d 691, 711 (D.N.J. 2011) (internal quotation and citation omitted).

Conte's complaint does not state a claim for unjust enrichment. Though she does allege that Promethean received revenue based on sales she made and

---

[4] While pleading in the alternative is permissible, I note also that the allegations do not suggest negligence. The entire thesis of Conte's complaint is that she was maliciously targeted by Defendants, who allegedly terminated her employment on false pretenses and then lied to her subsequent employer to get her fired again.

that Promethean declined to pay her commissions she was due (Compl. ¶ 87), thereby satisfying the first two elements of an unjust enrichment claim, Conte does not meet the requisite pleading standard for alleging the circumstances that make such nonpayment unjust.

At the core of Conte's claim here is that her termination was unjust, and that as a result, Promethean was not entitled to withhold her commissions. Because the underlying claims pertaining to the unjust dismissal do not survive this motion to dismiss, *see supra,* the unjust enrichment claim does not survive, either.

Count Five will be dismissed without prejudice.

### f.  Mitigation of Damages

Count Six of the complaint purports to state a claim for Defendants' "refusal to mitigate damages." Conte seems to imply that when she allegedly informed Defendants that Cole made false statements regarding complaints having been lodged against her, they failed to take remedial action and prevent further damage to Conte. (Compl. ¶¶ 117-120.) "Refusal to mitigate damages," however, does not set forth any recognized cause of action. Indeed, it is commonly asserted not by a plaintiff against a defendant, but by a defendant against a plaintiff, as a limitation on recoverable damages. *See, e.g., Fox v. Millman*, 210 N.J. 401, 424 (2012) (". . . plaintiffs would only be entitled to recover as damages such sums as they could demonstrate were properly theirs, a determination that necessarily implicates an evaluation of whether plaintiff failed to act so as to avoid the consequences of defendant's tortious conduct.") (internal quotation and citation omitted); *see also State v. Ernst & Young, L.L.P.*, 386 N.J. Super. 600, 617 (App. Div. 2006) (observing that "[i]t is well-settled that parties injured by a breach of contract have a common law obligation to take reasonable steps to mitigate their damages") (footnote and citation omitted).

Count Six will be dismissed without prejudice.

### g. Negligence

Count Seven of the complaint asserts a claim for negligence. To state a claim for negligence, a plaintiff must allege the following four elements: "(1) that the defendant owed a duty of care; (2) that the defendant breached that duty; (3) actual and proximate causation; and (4) damages." *Jovic v. Legal Sea Foods, LLC*, No. 16-01586, 2018 WL 5077900, at *2 (D.N.J. Oct. 18, 2018) (quoting *Fernandes v. DAR Dev. Corp.*, 222 N.J. 390, 403-04 (2015)).

Conte's negligence claim is procedurally improper. An employee may not "sue his [or her] employer in negligence nor can the employee sue a co-employee." All such negligence claims are subsumed by the scheme set up by the Workers Compensation Act. N.J. Stat. Ann. § 34:15-8; *see also Wellenheider v. Rader*, 49 N.J. 1, 9, 227 A.2d 329 (1967); *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 165, 501 A.2d 505 (1985). That is so regardless of the kind of injury alleged. *See Rodriguez v. Ready Pac Produce*, No. 13-4634, 776 F.3d 276, 2014 U.S. Dist. LEXIS 64139, at *17 (D.N.J. 2014). The proper forums for such grievances are the administrative bodies designed by the New Jersey Legislature for the purpose of handling such claims.

Even if Conte could sue Defendants for negligence, Conte's complaint would not state a claim. Conte's pertinent allegations consist of little more than a recital of the prima facie elements of a negligence claim. Indeed, for the first element, Conte asserts that Defendants "owed Conte a duty of care in dealing with [P]laintiff as a person they interacted with on a personal and business level, where [P]laintiff was in fact, as a result of dedicating over seven years of her professional life to defendants, completely dependent on Defendants as a result of circumstances wholly created by Defendants." (Compl. ¶ 122.)

The allegations are not moored to any recognized duty of care at common law or imposed by any law or industry standard. References to Conte's status as a familiar, longtime employee fall short of alleging such a duty of care.

Perhaps such a duty could be stated, but here it has not been. Conte's complaint fails to state a claim for negligence.

Count Seven will be dismissed without prejudice.

### h. Respondeat Superior

Count Eight purports to state a claim for "tortious conduct of employee," which the Court will construe as a claim that Promethean should be held liable for the actions of its employees, including Cole and Provost, through the doctrine of respondeat superior. Of course, respondeat superior is not an independent cause of action, but rather a doctrine for imposing liability on the employer of a person who has committed some tort. *Powell v. Verizon*, Civ. No. 19-8418, 2019 WL 4597575, at *13 (D.N.J. Sept. 20, 2019) (citations omitted). "Respondeat superior is not in itself, then, a 'claim upon which relief may be granted.'" *Id.* (quoting Fed. R. Civ. P. 12(b)(6)). Were this case to move forward, the doctrine of respondeat superior could apply to allocate liability for certain claims among the Defendants, but, particularly as the underlying counts have been dismissed, a respondeat superior count does not set forth a claim, and even to the extent valid, would be superfluous.

Count Eight will be dismissed.

## B. Personal Jurisdiction

Having dismissed all counts against Promethean on grounds equally applicable to Cole and Provost, I consider the personal jurisdiction issue for the guidance of the parties in connection with any amended complaint.

### 1. Legal Standard

A plaintiff bears the burden of establishing sufficient facts to show that personal jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2001). While a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff, *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002), it must still examine any evidence presented with regard to disputed factual allegations, *see, e.g., Eurofins Pharma US Holdings v. BioAlliance Pharma SA*, 623 F.3d 147, 155–56 (3d Cir. 2010)

(examining the evidence supporting the plaintiff's allegations); *Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence.") (quoting *Time Share Vacation Club v. Atl Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984)).

The plaintiff "need only establish a prima facie case of personal jurisdiction." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 97 (3d Cir. 2004). Nevertheless, a plaintiff may not "rely on the bare pleadings alone" in order to withstand a motion to dismiss for lack of personal jurisdiction. "Once the motion is made, Plaintiff must respond with actual proofs, not mere allegations." *Patterson*, 893 F.2d at 604 (internal citations omitted); *Time Share Vacation Club*, 735 F.2d at 66 n.9.

To assess whether it has personal jurisdiction over a defendant, a district court will undertake a two-step inquiry. *IMO Indus., Inc. v. Kiekert, AG*, 155 F.3d 254, 259 (3d Cir. 1998). First, the court is required to use the relevant state's long-arm statute to see whether it permits the exercise of personal jurisdiction. *Id.*; Fed. R. Civ. P. 4(k). "Second, the court must apply the principles of due process" under the federal Constitution. *WorldScape, Inc. v. Sails Capital Mgmt.*, No. 10-4207, 2011 U.S. Dist. LEXIS 86643, 2011 WL 3444218 (D.N.J. Aug. 5, 2011) (citing *IMO Indus.*, 155 F.3d at 259).

In New Jersey, the first step collapses into the second because "New Jersey's long-arm statute provides for jurisdiction coextensive with the due process requirements of the United States Constitution." *Miller Yacht Sales*, 384 F.3d at 96 (citing N.J. Ct. R. 4:4-4(c)). Accordingly, personal jurisdiction over a non-resident defendant is proper in this Court if the defendant has "certain minimum contacts with [New Jersey] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice."

*Provident Nat'l Bank v. Cat Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

A district court may hear a case involving a non-resident defendant if it possesses either of two kinds of personal jurisdiction: general or specific. *See Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414–15 & n.9 (1984). A court may exercise general jurisdiction when a defendant has "continuous and systematic contacts" with the forum state. *Id.* at 415. The defendant's "contacts need not relate to the subject matter of the litigation," *Ameripay, LLC v. Ameripay Payroll, Ltd.*, 334 F.Supp.2d 629, 633 (D.N.J. 2004), but must rise to "a very high threshold of business activity.' " *Id.* at 633 (quoting *Compagnie des Bauxites de Guinea v. Ins. Co. of N. Am.*, 651 F.2d 877, 891 (3d Cir. 1981)). The facts required to establish sufficient contacts for general jurisdiction must be extensive and persuasive. *Reliance Steel Prods. Co. v. Watson, Ess, Marshall & Enggas*, 675 F.2d 587, 589 (3d Cir. 1982). In other words, the plaintiff must demonstrate "significantly more than minimum contacts." *Provident Nat'l Bank*, 819 F.2d at 437.

In contrast to general jurisdiction, specific jurisdiction relies on the defendant's forum-related activities that give rise to the plaintiff's claims. *See Helicopteros*, 466 U.S. at 413–14. Establishing specific jurisdiction requires a three-part inquiry: (1) whether the defendant purposefully directed its activities at the forum; (2) whether the litigation arises out of or relates to at least one of the contacts; and (3) whether the exercise of jurisdiction otherwise comports with traditional notions of fair play and substantial justice. *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 317 (3d Cir. 2007). The defendant need not be physically located in the state while committing the alleged acts. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985). Nor is specific jurisdiction defeated merely because the bulk of harm occurred outside the forum. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 780 (1984). A single act may satisfy the minimum contacts test if it creates a substantial connection with the forum. *Burger King*, 471 U.S. at 476 n.18.

## 2. Analysis

As an initial matter, Defendants do not challenge this Court's personal jurisdiction over Promethean. As Defendants appear to acknowledge in their motion, because Promethean is a company conducting business in New Jersey whose business activity in the state is directly related to Plaintiff's claims, Promethean clearly has sufficient contacts with New Jersey such that this Court's exercise of specific personal jurisdiction comports with "traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 317. Defendants do, however, assert that this Court lacks personal jurisdiction over Cole and Provost. (Mot. 4.) Defendants argue that as individuals who live and work outside New Jersey—Cole in Georgia and Provost in Washington—the Court can exercise neither general nor specific jurisdiction over them. (Mot. 4-8.) I agree that, based on this record, Cole and Provost do not have "systematic and continuous" contacts with New Jersey such that they may be subject to the Court's general jurisdiction under *Helicopteros.* Specific jurisdiction, however, is a closer call, requiring careful consideration of the alleged contacts they have with the state of New Jersey and the extent to which those contacts relate to the current action.

The pleadings make clear that Cole and Provost do maintain some contacts with the forum state while performing their duties as Promethean employees. For instance, Cole is Promethean's Head of Sales and was responsible for supervising Plaintiff's work in New Jersey and the surrounding region. (Compl. ¶ 26, 50-53, 67-68, 80-81, 83.) He also possessed supervisory authority over Conte's New Jersey sales team, monitoring, directing, and overseeing various employee activities and events in New Jersey. (Compl. ¶ 36, 52-53.) Moreover, Conte also alleges that Cole's communications and actions through phone calls, emails, and business operations amounted to tortious conduct directed at her in the forum state. (Compl. ¶ 28-33, 36-38, 50-54, 56-58, 66-69, 80-81, 83, 85.) Provost is Promethean's Head of Human Resources. (Compl. ¶ 5.) As such, she is involved in managing and resolving employment

and workplace issues that arise among Promethean employees, including those working in New Jersey. (Compl. ¶ 75, 77-81, 83-85.) Conte alleges that Provost's actions and communications leading up to and following her termination also amounted tortious conduct directed at her in New Jersey.

These allegations, while perhaps thin, are surely suggestive. I would therefore deny the jurisdictional motion as presented. Should this action continue pursuant to an amended complaint, I would instead grant leave to obtain targeted jurisdictional discovery, under the supervision of the assigned Magistrate Judge.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is **GRANTED**. I note, however, that these are defects or missteps in pleading that might well be remedied by an amended complaint that reformulates certain of the legal theories and perhaps supplements the factual allegations. I therefore enter these dismissals without prejudice to the submission, within 30 days, of a proposed amended complaint.

An appropriate order follows.

Dated: September 30, 2022

/s/ Kevin McNulty

_____

**Hon. Kevin McNulty
United States District Judge**